UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DENISE KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 09-1539 (RJL) |
| | ) | |
| LIBERTY LIFE ASSURANCE | ) | |
| COMPANY OF BOSTON d/b/a/ | ) | |
| LIBERTY MUTUAL, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION
(August 9, 2011) [#43 and #44]

Plaintiff Denise King ("plaintiff" or "King") brought an action for breach of contract against defendant Liberty Life Assurance Company of Boston, d/b/a/ Liberty Mutual ("defendant" or "Liberty"), seeking withheld long term disability ("LTD") benefits under an employee welfare benefits plan in which she had enrolled in 2006 while an employee in the Fairfax County Public School System. Before the Court is plaintiff's Motion for Summary Judgment and defendant's Cross-Motion for Summary Judgment. After due consideration of the parties' pleadings, the relevant law, and the entire record herein, plaintiff's motion is DENIED and defendant's motion is GRANTED.

## BACKGROUND

On July 3, 2003, King underwent bariatric bypass surgery and began experiencing stomach strictures in August 2003. *See* Ex. C to Def.'s Cross-Mot. for Summ. J. ("Def.'s Cross-Mot.") at 10, July 8, 2010; Ex. H to Def.'s Cross-Mot. at 3. At the time of her surgery, King was employed by the Leary School in Virginia. Ex. C to Def.'s Cross-Mot

1

at 7. After the surgery, she stopped working and ultimately filed a disability claim with the Leary School's insurer, Hartford Life Insurance Company ("Hartford"). *Id.* For twenty-four months, Hartford paid King LTD benefits pursuant to its policy with the Leary School. *See* Def.'s Mem. in Supp. of Cross-Mot. for Summ. J. ("Def.'s Mem.") ¶ 9, Nov. 8, 2010. On August 1, 2006, however, Hartford terminated King's benefits because: (1) Hartford's policy only provided LTD benefits for a maximum twenty-four month period; and (2) King failed to establish she was unable to perform "Any Occupation," as required by Hartford's policy. *Id.*

On April 18, 2006, King called her primary care physician for a possible follow-up from the surgery. Ex. D to Def.'s Cross- Mot. at 2. According to her physician's office note for that visit:

> Patient here for follow up. She continues to feel she cannot work. She states she has persistent bowel pain, cramps, vomiting, and is unable to sit or work longer than a few minutes. She complains of right hip pain. Is worse with prolonged sitting. She still needs to eat on a regular schedule and amount. 'I cannot work during shifts or irregular hours.' She still has anxiety and needs Xanax daily. She is very anxious and she feels she cannot follow specific instructions due to difficulty with concentration.

*Id.*; *see* Ex. E to Def.'s Cross-Mot. at 7-8. His diagnosis of King's condition on that date was "Status post-gastric bypass with multiple somatic complaints. Anxiety." Ex. D to Def.'s Cross-Mot. at 2; *see* Ex. E to Def.'s Cross-Mot. at 8.

Following the April 2006 visit, her doctor renewed the wide array of prescriptions he had previously prescribed her: Zoloft, Nexium, Aciphex, Xanax, Vicodin, and Zelnorm. Ex. E to Def.'s Cross-Mot. at 8.

A few months later, on August 15, 2006, King again visited her primary care physician again for a follow up to her April visit. *Id.* at 11. According to his office note for that visit:

> She continues to have recurrent vomiting, nausea, and sudden loss of bowel movements. She cannot sit for prolonged periods. She is a special education teacher and is unable to teach with her episodes. She has not been able to work part time. She takes daily Xanax for anxiety and pain meds from chronic abdominal pain. She has difficulty with concentration.

Ex. F to Def.'s Cross-Mot. at 2; *see* Ex. E to Def.'s Cross-Mot. at 11-12.

*Two days later*, on August 17, 2006, King began working for the Fairfax County Public School System ("FCPS") as a special education teacher.[1] Ex. B to Def.'s Cross-Mot. at 3. King enrolled in an employee welfare benefits plan—the Group Disability Income Policy ("Policy")—provided by FCPS and administered by defendant. *Id.*; *see also* Ex. A to Def.'s Cross-Mot. at 2. King's effective date of coverage under the Policy was September 1, 2006. Ex. B. to Def.'s Cross-Mot. at 3.

During the period from September 1, 2006 to August 31, 2007, King consulted her primary care physician and several other physicians for a variety of symptoms including anxiety, chronic pain, tiredness, abdominal pain, and nausea. *See* Ex. C. to Def.'s Cross-Mot. at 10; Ex. G to Def.'s Cross-Mot. Also during that period, she continued to take the same medications that her primary care physician had previously prescribed her. *See* Ex. F to Def.'s Cross-Mot. at 2; Ex. G to Def.'s Cross-Mot. at 2-15.

---

[1] Plaintiff contends she began working for FCPS on August 15, 2006. However, she does not provide any admissible evidence supporting her contention. Defendant, on the other hand, provides the January 22, 2009 claim denial letter, which indicates that plaintiff's start date was August 17, 2006. *See* Ex. B to Def.'s Cross-Mot. at 3.

3

On February 2, 2007, King began taking intermittent leave from work due to her various medical ailments, including: syncope, chronic abdominal pain, nausea, vomiting, fatigue, and cognitive difficulties.[2] Ex. B to Def.'s Cross-Mot. at 3. Three days later, on February 5, 2007, King filed claims for short and long term disability benefits.[3] Id. at 2. The Policy offers long term disability benefits for employees unable to work because of a disability, as defined by the Policy's terms. See Ex. A to Def.'s Cross-Mot. For LTD benefits, the Policy defines "Disability" or "Disabled" as follows:

> a.   if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
> b.   thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

Id. at 7. The Policy defines "Own Occupation" as follows:

> the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For purposes of determining

---

[2] Defendant has submitted a sworn declaration from Dr. Holly R. Dahlman, M.D., a physician board certified in internal medicine. It is Dr. Dahlman's professional opinion to a reasonable degree of medical certainty that all of the symptoms, other than short-term eye pain and gynecological issues, reported by plaintiff during the period of September 1, 2006, to August 31, 2007, were caused by the conditions for which plaintiff received treatment from her primary care physicians on August 15, 2006—specifically, arthritis and post-bariatric surgery complications. See Declaration of Dr. Dahlman ("Dahlman Decl.") ¶ 18, Ex. H to Def.'s Cross-Mot. The short-term eye pain and gynecological issues are not at issue in this case. Subsequent to August 31, 2007, plaintiff reported symptoms of vasovagal syncope to her primary care physician. Id. ¶ 19. It is Dr. Dahlman's professional opinion to a reasonable degree of medical certainty that plaintiff's syncope was caused by multiple factors—including abdominal pain, pre-existing vomiting, possible dehydration, narcotic pain medications, and later established iron deficiency anemia—all of which resulted from plaintiff's bariatric surgery. Id.
[3] Short term benefits are not at issue in this case.

Disability under this Policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

*Id.* at 9.

To be eligible for LTD benefits, a claimant must not fall into the Policy's pre-existing condition exclusion. The relevant terms of the exclusion are as follows:

> Pre-Existing Condition Exclusion:
> the policy will not cover any Disability or Partial Disability:
> 1. which is caused or contributed to by, or results from a Pre-Existing Condition; and
> 2. which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

*Id.* at 27. The Policy defines "Pre-Existing Condition" as "a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage." *Id.* Under the Policy, "Treatment" means "consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines." *Id.* at 10.

Although King received short term benefits from February 2, 2007—King's date of disability—until July 7, 2008, defendant denied LTD benefits on July 7, 2008, finding that King's medical ailments fell within the Policy's pre-existing condition exclusion. *See* ECF No. 35 at 38-39; Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mot.") at 12. Ultimately, King completely ceased working for FCPS on October 29, 2007. *See* Ex. B to Def.'s Cross-Mot. at 2.

5

On January 22, 2009, upon King's request for reconsideration, defendant issued a final denial of LTD benefits. Ex. B to Def.'s Cross-Mot. at 2. Using the February 2, 2007 date of disability, defendant stated that it could not alter its original determination because it again found King's medical ailments fell within the Policy's pre-existing condition exclusion. *Id.* Defendant also considered an alternative date of disability—October 18, 2007—based on King's attempts to return to work following her temporary absences. *Id.* Defendant even denied her LTD benefits under the October 18th date, finding that King's ailments did not constitute a disability as defined by the Policy. *Id.*

On August 8, 2009, King filed this lawsuit, seeking to recover the back-due LTD benefits denied by defendant. *See* Complaint ("Compl.") ¶ 21. On October 18, 2010, King filed a Motion for Summary Judgment. *See* Docket Entry 43. On November 8, 2010, defendant filed a Cross-Motion for Summary Judgment. *See* Docket Entry 44. For the reasons stated below, King's Motion for Summary Judgment is DENIED and Defendant's Cross-Motion for Summary Judgment is GRANTED.

## STANDARD OF REVIEW

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden, and the court will draw "all justifiable inferences" in the favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248

6

(internal quotations omitted). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits its own affidavits, declarations, or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

**LEGAL ANALYSIS**

*I.   Applicable Law*

Although the Employee Retirement Income Security Act ("ERISA") generally covers "employee welfare benefit plans," the Act specifically excludes government plans, including disability policies "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." *See* 29 U.S.C. §§ 1002(32), 1003(b)(1). Both King and defendant agree that because FCPS is a government entity, ERISA does not apply here. *See* Compl. ¶ 11; Pl.'s Mot. at 19; Def.'s Mem. at 15-16.

Federal courts sitting in diversity cases ordinarily apply the forum's choice of law principles. *See Gray v. Am. Express Co.*, 743 F.2d 10, 16 (D.C. Cir. 1984). As both parties agree, the instant case involves a breach of contract. *See* Pl.'s Mot. at 19; Def.'s Mem. at 18. In our Circuit, parties to a contract may specify the choice of law that they wish to govern the contract "'as long as there is some reasonable relationship with the state specified.'" *Whiting v. AARP*, 637 F.3d 355, 361 (D.C. Cir. 2011) (citing *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995)). Here, the Policy expressly provides a choice of law provision, which states that the Policy is governed by Virginia law. *See* Ex. A to Def.'s Mot. at 2. Additionally, the evidence clearly shows that "there

is some reasonable relationship" with Virginia. *See Whiting*, 637 F.3d at 361. First, the defendant delivered the policy to FCPS in Virginia. *See* Ex. A to Def.'s Mot. at 2. Second, the Policy covers employees of FCPS, including King—a government entity created by and operating within Virginia. *See* Pl.'s Compl. ¶¶ 6, 11; *see also* VA. CODE ANN. § 22.1-2. Third, King is a Virginia resident. *See* Pl.'s Compl. ¶ 6; *Pierce v. Showell*, 357 F. Supp. 2d 307, 310 (D.D.C. 2005) (holding a choice of law provision had a reasonable relationship with the state chosen because the plaintiff was a citizen of that state). Further, neither party disputes the applicability of the choice of law provision. *See Mobile Satellite Commc'n, Inc. v. Intelsat USA Sales Corp.*, 646 F. Supp. 2d 124, 130 (D.D.C. 2009) (upholding a choice of law provision in a contract where the parties did not dispute its applicability). Therefore, the Court will apply Virginia law.[4]

## II. Breach of Contract Claim

King contends that defendant breached the employee welfare benefits contract by denying her the long term disability benefits she is owed under the Policy. *See* Compl. ¶¶ 20-21; Pl.'s Mot. at 19. Under Virginia law, "the elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by

---

[4] Although plaintiff correctly acknowledges that ERISA does not apply to the Policy, she contends that ERISA caselaw may be used persuasively without providing any relevant caselaw to support her contention. Pl.'s Mot. at 19. In fact, most of plaintiff's contentions are incorrectly based on ERISA jurisprudence, rather than Virginia contract law. This Court has not found any binding authority requiring the Court to use ERISA jurisprudence persuasively. Indeed, Congress specifically created an exception in ERISA for Government plans established by state and local governments. As both parties agree, this is a breach of contract case, and as such, this Court will look to Virginia substantive law, as required by law.

the breach of obligation." *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009) (internal citation and quotation marks omitted). Defendant contends that it did not breach the contract because it had no legally enforceable obligation to King for her alleged disability as it was a pre-existing condition and, therefore, was excluded from coverage under the Policy. Def.'s Mem. at 18. I agree.

The Policy explicitly excludes from coverage any disability (1) "caused or contributed by, or resulting from a Pre-Existing Condition," i.e., a condition that "result[s] from an injury or sickness for which the covered person is diagnosed or received Treatment within three months prior to the covered person's effective date of coverage," and (2) that begins in the first twelve months immediately after the person's effective date of coverage. *See* Ex. A to Def.'s Cross-Mot. at 27. The Policy defines "Treatment" as "consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines." *Id.*

King's effective date of coverage under the Policy was September 1, 2006. In April 2006, she consulted her primary care physician for a follow-up from her bariatric bypass surgery and was prescribed a wide-range of medications to treat her various post-bariatric ailments. Then, on August 15, 2006—two weeks *prior* to her effective date of coverage—King had another follow-up consultation with her primary care physician in which she complained that she continued to suffer from these various post-bariatric

conditions.[5] Indeed, King continued to take anxiety and pain medications and Dr. Dahlman—the only physician expert witness identified by either party—has opined that King's symptoms for which she has claimed a disability were caused by the post-bariatric condition. *See* Dahlman Decl. ¶¶ 18-19, Ex. H to Def.'s Cross-Mot.

Thus, during the three-month period prior to her September 1, 2006 effective date of coverage, King was still clearly receiving medical "Treatment" for her post-bariatric conditions. Additionally, when King filed her disability claim in February 2007, she was well within the twelve month period following her effective date of coverage. Because King sought "Treatment" within three months prior to the effective date of coverage and her alleged disability began within twelve months of that same date, her alleged disability is excluded from coverage as a "Pre-Existing Condition" under the Policy and defendant has not breached the contract.[6] Indeed, King admitted in her own deposition in 2010 that

---

[5] According to Dr. Dahlman's declaration, during that visit, Dr. Perez prescribed King with the same medications he had previously prescribed her in April. *See* Dahlman Decl. ¶¶ 15, 17, 18, Ex. H to Def.'s Cross-Mot.

[6] Plaintiff does not dispute that the symptoms from which she suffers began immediately after she underwent bariatric bypass surgery in 2003. Instead, plaintiff contends that the February 2007 disability date cannot be used because defendant offered a second, alternative date of disability—October 18, 2007—in its final denial letter. *See* Pl.'s Mot. at 17; Pl.'s Opp'n to Def.'s Cross-Mot. ("Pl.'s Opp'n") at 5. In other words, plaintiff contends that by including the second date of disability in its final letter, defendant has waived the use of the first date of disability that was included in both the initial and final denial letter. Plaintiff's argument is unavailing. Defendant has never conceded that the first disability date does not apply and has not forfeited that argument. Defendant has consistently used the February 2007 disability date in each of its denials. Indeed, in its final denial letter, defendant very clearly stated that it could not alter its original determination because the conditions for which plaintiff claimed disability "were caused, contributed to by, or resulting from a Pre-Existing Condition." Ex. B to Def.'s Cross-Mot. at 2. Defendant's final denial of the disability claim based on alternative grounds does not preclude defendant from using the February disability date.

she still continues to suffer from various symptoms of her 2003 post-bariatric surgery. *See* Ex. C to Def.'s Cross-Mot. at 7-10.

## CONCLUSION

Thus, for all of the foregoing reasons, King's Motion for Summary Judgment, ECF No. 43, is DENIED and defendant's Cross-Motion for Summary Judgment, ECF No. 44, is GRANTED.[7] An appropriate order will accompany this memorandum opinion.

RICHARD J. LEON
United States District Judge

---

Similarly, plaintiff contends defendant improperly "mended its hold" by offering new grounds for which to deny her LTD benefits claim. *See* Pl.'s Opp'n to Def.'s Cross-Mot. ("Pl.'s Opp'n") at 5-6. For support, plaintiff relies heavily on ERISA caselaw, which is not applicable in this case. However, plaintiff also cites *Railway Co. v. McCarthy*, 96 U.S. 258, 267-68 (1877), for the proposition that a party cannot "mend its hold," i.e., "[w]here a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration." Although the Court need not reach this issue because plaintiff failed to allege it in her complaint, her contention lacks merit. Here, rather than rely on a new ground, defendant offers the same rationale in its briefing as it did in its denial letters for why plaintiff is ineligible for benefits under the Policy. Therefore, defendant did not "mend its hold."

[7] King's last-ditch effort to bring a bad faith claim is unavailing. *See* Pl's Opp'n at 1-2. Although the Court need not reach the issue of bad faith because King failed to allege the issue in her complaint, there is no indication on the record that defendant acted in bad faith.